# Blackman *v.* Dowling.

*Action on Promissory Note, by Payee against Maker.*

1. *Written contract; implied stipulations.*—When parties enter into written contracts, the express stipulations and conditions therein contained can not be extended by implication: the writing is presumed to express all the stipulations, and none can be implied.

2. *Conditional note.*—Where a promissory note, given in consideration of the payee's interest in a contract with the United States for carrying the mail on a specified route, contains the express conditions, "that said route is not abolished, nor the pay by the United States diminished"; the failure of the principal contractor, under whom the payee of the note derived his interest in the contract, to pay over to the maker his proportion of the compensation received from the United States, is no defense to an action on the note.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Thomas G. Blackman, against John W. Dowling; was commenced on the 20th August, 1874, and was founded on a written contract, or promissory note, signed by the defendant, of which the following is a copy:

"Ozark, Ala., Dec. 29th, 1869. By the first day of January, 1871, I promise to pay Thomas G. Blackman two hundred dollars for his part of the mail contract on route No. 6789, in Alabama; on the condition, that said route is not abolished, nor the pay by the United States is not diminished during the time of said contract; in which event, such pay to be in *pro rata* with that that I may receive from the United States."

The defendant pleaded, "in short by consent—1st, the general issue; 2d, payment and set-off; 3d, failure of consideration;" and. 4th, a special plea as follows: "That the consideration for which said note was given was a one-third interest which plaintiff had in a contract for carrying the mail on route No. 6789, from Geneva to Louisville, Alabama, and subsequently extended to Clayton; that defendant purchased said interest in said contract from plaintiff on the 29th December, 1869, giving him the note for $200, on which this suit is founded, with a proviso therein contained, that if any reduction or change in the pay for carrying the mail on said route should be made by the post-office department of the United States, then defendant would pay, according thereto, such *pro rata* of said $200 as might be paid after

[Blackman v. Dowling.]

such reduction; that defendant owned a two-thirds interest in said contract, and plaintiff a one-third interest therein; that a deduction of the pay for carrying said mail over said route was made by the post-office department, and was made to apply to the entire contract, embracing the period from July 8th, 1867, to June 30th, 1871, amounting in the aggregate to about $730, one third of which sum embraced and covered the said interest of plaintiff, being over $200; all which was, in consequence of said reduction, totally lost by defendant. Wherefore, according to the proviso in said note contained, defendant does not owe plaintiff any thing." Issue seems to have been joined on all these pleas.

It was shown on the trial, as appears from the bill of exceptions, that in 1867 the plaintiff and defendant, together with one Hughes, desiring to procure the contract for carrying the United States mails over the route designated in the note sued on, and being unable to obtain it in their own names under the laws and regulations then in force, induced one Bryan Tyson, of Washington City, to take the contract in his own name, for them; they becoming bound as his sureties, and performing the service, and allowing him to retain five per cent. of the compensation, which was paid to him. The compensation was $1,000, payable quarterly; and the contract extended from July 1st, 1867, to June 30th, 1871. During this term, the contract was modified by orders from the post-office department, as follows: "September 15, 1869. Extend route ten miles, to commence at Clayton, and add $123.45 to annual pay from October 1, 1869." "October 27, 1870. Omit Brundidge, reducing distance fifteen miles, and deduct $185.18 per annum, pro rata from July 8, 1867, and allow one month extra pay on sum saved." "December 5, 1871. Modify order of October 27, 1870, so as to take effect October 11, 1867." "August 16, 1872. Revoke order of December 5, 1871, and modify order of October 27, 1870, so as to make it take effect from its date, instead of July 8, 1867." The money was paid regularly to Tyson, and by him to the defendant and Hughes according to their contract; except that, under the orders revoking the order by which the compensation was reduced, he received $6i1.33 on the 18th October, 1872, and failed to pay over any part of it to them.

The court charged the jury, among other things, as follows: "If you find, from the evidence, that the mail route was not abolished, nor the pay reduced, during the period named in the contract, your verdict will be for the plaintiff, for the whole amount promised, with interest from the 1st January, 1871. The first material inquiry is, was the route abolished, or the pay reduced? If, from the evidence, you

[Blackman v. Dowling.]

find that it was abolished, or the pay reduced, then the next inquiry is, how much pay did the defendant receive under the contract so abolished or reduced; and your verdict will be for the plaintiff, for such portion of the two hundred dollars promised as the amount actually received bears to the amount defendant would have received under the contract then existing, had the route not been abolished, or the pay reduced. The plaintiff insists, that if Tyson received the full amount of pay that was or would be due under the contract, as it existed at the time plaintiff sold his interest to defendant, then defendant is liable on his promise, whether he received it or not. Tyson was as much the agent of plaintiff as defendant, although plaintiff sold his interest in the contract to defendant; so that, if you find that Tyson received the money, then the question is, whether the defendant failed to receive it through any fault of his own. If he did, he is liable as though he had received it; but, if his failure to collect it was no fault of his, then he is not liable, but for the proportion of so much as he did receive." This charge, to which the plaintiff excepted, he now assigns as error, together with the refusal of several charges asked by him.

W. D. WOOD, for appellant.

W. C. OATES, contra.

BRICKELL, C. J.—The questions presented by the record involve the construction of the contract on which the suit is founded. The contract is not absolute: it is subject to a condition, or a contingency, clearly expressed—the abolition of the mail-route—on the happening of which, the promissor would be discharged from all liability. And it is subject to another condition, on the happening of which there would be an abatement of the sum of money the promissor was bound to pay. The condition is a diminution by the United States of the compensation promised for the carrying of the mail on this route. The parties have thus expressed in writing the conditions by which they are to be bound; and it is not in the power of the courts to imply the existence of others. The rule is of very general, if not universal application, that where parties have entered into written engagements, with express stipulations, these cannot be extended by implication. The presumption is, that, having expressed some, they have expressed all the conditions by which they intend to be bound.

The sum which Dowling promised to pay was not subject

[Boswell v. The State.]

to abatement, because he may not have received the compensation to which he was entitled under the contract for carrying the mail. It was subject to abatement only in the event the United States diminished the compensation. There was at one time a diminution, but afterwards this order was revoked, and the original compensation restored. The United States paid over the compensation to Tyson, the contractor, to whom alone it could have been properly paid, and with whom alone the contract was made. Such payment the parties must have contemplated. Whatever relation may have existed between Tyson and Blackman, before the sale by the latter of his interest in the mail contract to Dowling, was dissolved by the sale. Blackman, after the sale, had no right or interest which Tyson could represent. He was not entitled to receive, either from Tyson, or from the United States, any part of the compensation due from the latter for carrying the mail. All his rights in this respect passed to Dowling by the sale; and having no rights Tyson could represent, it follows that he is not bound or affected by Tyson's acts or omissions, or by his want of fidelity to Dowling. To make him answerable for Tyson's unfaithfulness is to imply a stipulation not found in the contract.

The rulings of the Circuit Court were inconsistent with these views; and the judgment must be reversed, and the cause remanded.