# Worthington & Co. v. Gwin.

## Action for Breach of Contract.

1. *Motion to strike; overruling not reviewable when defect subject to demurrer.*—In an action for the breach of a contract, if one of several assignments of the breach is insufficient, the defect can be reached by demurrer to such assignment, without demurring to the whole complaint. In such case it is in the discretion of the court to grant the motion to strike such assignment or put the defendant to his demurrer, and the overruling of the motion is not revisable on appeal, unless it affirmatively appears that defendant was prejudiced thereby.

2. *Damages for breach of contract; profits; expenditures.*—The damages for the breach of a contract by which plaintiff was to mine a certain described body of ore at a fixed price per ton, when its full performance was prevented by the other party without fault on plaintiff's part, may consist of one or the other of two items, first, the profits that would have been realized by a full performance, and second, if there would have been no profits, or if the proof fails to show what would have been the amount, the reasonable expenditures made for tools, implements, fixtures, etc., and the loss of time, less the value of the material on hand.

3. *Joinder of alternative claims for damages.*—While both profits and necessary expenditures in preparation for carrying out the contract are not recoverable, since the profits include, in their calculation, the expenditures, less the value of material on hand, still both may be included and claimed in the complaint, and defendant is able to protect himself by a request for appropriate charges to the jury.

4. *Contract construed.*—A contract whose sole subject matter is the mining of a described body of ore at a fixed price per ton, providing "that said ore is to be mined and put on board the cars free of foreign substance and in a manner satisfactory to the furnace company receiving the same," does not impose on the miner an obligation with respect to the manner in which the ore is to be taken from the ground, or loaded on the cars, but simply requires him to furnish on board the cars ore free from foreign substance, other than such as was contained in the vein of ore, and satisfactory in this respect alone to the furnace company to which it might be shipped.

5. *Entire and severable contracts; breach of; effect.*—If a contract be entire in the sense that each and all its parts are interde-

pendent, so that one part cannot be violated without violating the whole, a breach by one party of a material part will discharge the whole at the option of the other party; but if the contract be severable, susceptible of division and apportionment, the amount to be paid by the one party depending upon the extent of performance by the other, the mere failure to perform a part of the contract in strict compliance with its terms, will not of itself necessarily authorize the party injured to refuse further performance.

6. *Severable contracts, what breach will avoid.*—The right to claim a discharge of the whole of a severable contract depends, not on whether the act constituting the breach was inconsistent with the terms of the contract, but whether it was inconsistent with an intention to be further bound by its terms, or whether the breach was such as to defeat the purpose of the contract.

7. *Case at bar.*—Where, under a contract plaintiff obligated himself to mine all the ore within a given territory free from foreign substance and satisfactory to the furnace company receiving it, without limit in time, nor any requirement as to the quantity mined in a given time, and defendant's obligation was merely to permit plaintiff to mine the ore and pay monthly a specified sum for each ton delivered during the previous month, the contract was severable and not entire, and the fact that in mining several thousand tons, a small quantity was mined and delivered not according to the terms of the contract, did not give defendant any right to forbid plaintiff to continue mining ore under the contract.

8. *"Satisfactory"; mere expression of dissatisfaction does not disprove.*—Where the contract stipulates that ore is to be mined free from foreign substance, and "satisfactory to the furnace company" receiving it, the mere expression by the furnace company of dissatisfaction with the ore would not authorize a termination of the contract. It is only the actual existence, not the mere expression of dissatisfaction, regardless of its reasonableness, that can have this effect, and it is for the jury to say whether this dissatisfaction did exist as a fact, or whether it was expressed as a mere pretext.

9. *Contract construed as to quantity, etc.*—Where by contract plaintiff was to mine all the ore within certain limits, he had the right to mine all such ore, notwithstanding he had mined ore without the prescribed limits equal in amount to that remaining unmined within the limits of the contract.

APPEAL from Birmingham City Court.

Tried before Hon. WM. W. WILKERSON.

The questions presented by the various assignments of

error, based on the pleadings and the evidence, are shown in the opinion. The defendants excepted to the following portions of the oral charge of the court: (*a*) "The plaintiff had a right to mine the out crop ore in the territory, all of it, and if he mined outside of it and didn't mine all that was in it, though he mined outside, that which he mined outside couldn't be used to counterbalance that which he didn't mine on the inside, and deprive him of the right to mine that which was actually on the inside of the limits, as they in reality were." (*b*) "Under the contract, the plaintiff was entitled to go back to a face of 15 feet. He was entitled to mine all along the line of his territory until he came to a face of 15 feet. If in one place he mined back to a face of 20 feet, and at another place he mined back to a distance of only 13 feet, the matter of excess of territory that he mined which he had no authority to mine under the contract isn't in controversy in this case, and he would have a right to mine that 13 feet back to a face of 15 feet." (*c*) "If the plaintiff mined the ore free from foreign substance and satisfactory to the furnace company, and in the matter of comparatively few cars, it was unsatisfactory or contained foreign substance, then because he sent in those cars, the defendants would not have a right to terminate the contract, but they would have a right to reject that ore and not pay for it, if the plaintiff insisted thereafter upon sending cars of ore that would fulfill the requirements of the contract." (*d*) "The contract sued on is what is known as a continuing contract; that is to say, one duty was to be performed at one time by the plaintiff, and then another duty—the payment was to be performed by the parties, and that thing was to go on from time to time, and simply because there was a failure of duty on the part of one party or the other at one time, or several times in this continuing contract, the other party would not be justified in entirely breaking the contract on that account." (*e*) "That satisfactory, to the furnace company, means such ore as should be considered by the furnace company as reasonably adapted for the purpose for which they wished to use it. It was left to the furnace company to say what ore was satisfactory, and it was not satisfactory, whenever they pronounced the ore unsatisfactory, or if they in good

[Worthington & Co. v. Gwin.]

faith said it was unsatisfactory, it was unsatisfactory, because whether the ore was satisfactory was necessarily left to the furnace company." (*f*) "But if it was only a few cars of unsatisfactory ore, or bad ore, and there was evidently an intention on the part of the plaintiff to thereafter, after he was notified to quit, to furnish ore that would come up to the specifications of the contract, then he should have been permitted to have gone on and furnished such ore under the contract, and if the defendants failed to let him do it, then they would be liable for the consequent damages." The court, at the request of the plaintiff, gave to the jury the following written charges: (1.) If the jury believe from the evidence that defendants stopped plaintiff from work and prevented him from carrying out the contract on his part, then before such action can be justified on the ground that plaintiff was not mining and loading ore in a manner satisfactory to the furnace company, the jury must be reasonably satisfied from the evidence that such mining or loading was such that the jury would infer that plaintiff intended no longer to comply with the contract. (2.) The rule is that defaults by one party in making particular payments or deliveries will not release the other party from his duty to make the other deliveries or payments stipulated in the contract, unless the conduct of the party in default be such as to evince an intention to abandon the contract or a design no longer to be bound by its terms or to comply with its terms. (3.) Unless the jury believe from the evidence that the plaintiff intended to abandon the contract, or no longer comply with its terms, then the mere fact, if it be a fact, that some of the ore mined and loaded by plaintiff was not satisfactory to the furnace company receiving the same, would of itself furnish no sufficient excuse to defendant to prevent plaintiff from carrying out its contract, if the jury believe from the evidence that defendant did so prevent plaintiff. (4.) On a contract for the mining and delivery of ore in a particular manner by successive deliveries to be paid for in successive payments, a default in the manner or quality of one or more deliveries will not discharge the other party unless it appears that the defaulting party intends no longer to fulfill the contract. (5.) If the jury believe the evidence in this cause, the fact, if it be a fact, that several cars of

[Worthington & Co. v. Gwin.]

ore shipped by plaintiff were not satisfactory to the furnace company, would not, of itself, authorize defendants to stop plaintiff from work. (6.) If the jury believe from the evidence that defendants stopped plaintiff from work under the contract, and without a cause sufficient in law, prevented plaintiff from fulfilling the contract on his part, and the jury further believe from the evidence that plaintiff suffered damages as a proximate consequence thereof, the jury must find a verdict in favor of plaintiff. (7.) The mere fact, if it be a fact, that ten or twelve cars of ore, delivered by plaintiff, were unsatisfactory to the furnace company, would not of itself justify defendants in stopping plaintiff from work, if the jury believe from the evidence that defendants did stop plaintiff. (8.) The mere fact, if it be a fact, that ore mined and loaded by the plaintiff was not satisfactory to the furnace company, would not be a legal excuse for defendant's stopping plaintiff from work under the contract, if the jury believe from the evidence that he was so stopped. (9.) The mere expression of dissatisfaction on the part of the furnace company, unless it is in good faith would furnish no sufficient excuse to defendant to stop plaintiff or prevent him from carrying out his contract, if the jury believe from the evidence that defendant did so stop or prevent plaintiff. (10.) If the jury believe from the evidence that the ore mined and loaded by plaintiff under the contract was so mined and loaded on board the cars free from foreign substance and in a manner satisfactory to the furnace company, then it does not matter of what quality the ore itself was." The court refused the following charges requested in writing by defendants: (1.) "If the jury believe from the evidence in this case that on many occasions during the winter and spring of 1895, M. M. Gwin mined and shipped ore which was not free from foreign substance, and which was not satisfactory to the furnace company receiving the same, then the court charges the jury that such conduct on the part of Gwin constituted a violation of the contract sued upon, giving defendant a right to terminate said contract; and if the jury believe from the evidence that on account of such violation of the contract by Gwin, Worthington & Co. rightfully terminated such contract, then they would not be liable for any ore mined after the termination of said contract, unless they waived said viola-

tion or through themselves or their authorized agents received said ore." (2.) "If the jury believe from the evidence that M. M. Gwin did under the contract in suit, strip, mine and quarry and deliver one quarter of a mile of the outcrop ore on the southwest side of Birmingham Mineral Railroad, at Reeder's Gap, back to an average face of fifteen feet; and if the jury believe from the evidence that he was paid by defendants for all the ore so mined; then the jury will find a verdict for the defendants, although they may believe from the evidence that there were particular places in said quarter of a mile where the ore had not been stripped and mined back to a face of fifteen feet."

WALKER PERCY, for appellants.

Plaintiff could not recover for expenses incurred by him in getting ready to carry out his contract and also the profits that he would have made had he been allowed to carry it out.   If he was wrongly prevented from completing it, he is not entitled to recover the outlay made preparatory to the execution of the contract.   A motion to strike is the remedy for eliminating an improper claim for damages.   Plaintiff's contract was an entire contract to mine and deliver for the defendants in a certain manner, a specified body of ore.   The essence of the contract was not only the mining of the ore, but the mining it free from foreign substance, and in a manner satisfactory to the furnace company receiving same.   Plaintiff's readiness or willingness to comply with the contract was no answer to the charge that he did not comply with it. *Johnson v. Allen*, 78 Ala. 391; *Warrington v. Wright*, 115 U. S. 188.   Where the employe guarantees satisfaction, the master has full power to determine whether the work is satisfactory, and the reasonableness of the grounds of dissatisfaction cannot be inquired into. *Allen v. Mutual Compress Co.* 14 So. Rep. 362.

O. W. WARD, and BOWMAN & HARSH, *contra.*—In the event of plaintiff's inability, through the wrong of defendants, to prove the amount of his lost profits, the reasonable expenditures made would have been an element of plaintiff's recoverable damages.—*Danforth & Armstrong v. Tenn. & Coosa R. R. Co.*, 93 Ala. 620, and authorities.   The refusal of the court to strike parts of

4

the complaint, is not revisable.—*Columbus & W. R. R. Co. v. Bridges,* 86 Ala. 451; *Goldsmith v. Pickard,* 27 Ala. 142. Will the violation of a continuing contract, in ever so small a part, authorize the other party to annul it? The following authorities answer the question in the negative.—*Cohen v. Platt,* 25 Am. Rep. 203; *Scott v. Kittaming Coal Co.* 33 Am. Rep. 159; *King Phillip's Mills v. Slater,* 34 Am. Repts. 609. The mere expression of a simulated or capricious dissatisfaction would not conclude plaintiff's rights, if the furnace company was in fact satisfied.—*Silsby Mfg. Co. v. Chico,* 24 Fed. Rep. 893; *Hartford Mfg. Co. v. Brush,* 43 Vt. 528; *Duplex S. Boiler Co. v. Gardner,* 101 N. Y. 388; *City of Brooklyn v. Brooklyn C. R. R.* 47 N. Y. 475; *Micssell v. Globe M. L. Ins. Co.* 76 N. Y. 115; *Singerly v. Thayer,* 108 Penn. St. 298.

BRICKELL, C. J—This action was instituted by appellee to recover damages for the breach of a mining contract entered into between appellants and appellee's assignor. By the terms of the agreement, which was in the form of a written proposition by Thomas H. Dunn and the acceptance thereof by appellants, appellee was to "strip, quarry and deliver one quarter of a mile of the out-crop [ore], commencing at a point nearest the Birmingmam Mineral Railroad, at 50 cents (fifty cents) per ton of 2240 lbs., weight to be ascertained from furnace company receiving the ore, such furnace company weighing the ore in the usual manner. Ore to be paid for on the 20th day of each month for the ore shipped on the previous month. The 50 cents per ton to be my whole compensation for mining, quarrying and delivering said ore on board cars. You to loan what rails I need for delivering ore on board cars. Said rails to be returned when job is completed. The ore is to be stripped up to a face of from 10 to 15 feet as I may prefer to do. I will commence work on the 8th and put on a force of 12 or 15 teams, and commence the delivery of the ore as soon thereafter as practicable. The said ore is to be mined and put on board the cars free of foreign substance and in a manner satisfactory to the furnace company receiving the same." The principal breach assigned is, that "defendants ordered plaintiff to cease mining ore under said agreement." There are other assignments, among

which is one averring that defendants "caused the railroad company not to furnish the plaintiff with cars on which to load ore mined and to be mined under said agreement." The damages claimed consisted of the loss of profits which would have been earned if plaintiff had been allowed to carry out the contract, and also the loss sustained by reason of his purchase of a "large quantity of rails, tools, implements and fixtures in and about carrying out said agreement." The overruling of the motions to strike out the averment by which the last mentioned damages were claimed, and the averment that defendant had caused the railroad company not to furnish cars, did not constitute reversible errors. If the averment that defendant caused the railroad company to refuse to furnish cars was insufficient as an assignment of a breach of the contract, the defect could have been taken advantage of by demurring to this assignment of breach without demurring to the whole complaint, and in such case it is discretionary with the trial court whether to strike the averment constituting the defective assignment, or to put the defendant to his demurrer, and its refusal to grant the motion to strike is not revisable on appeal, unless it affirmatively appears that defendant was prejudiced thereby.—*Columbus & West. R'y Co. v. Bridges,* 86 Ala. 448. The damages for the breach of a contract of this character, when its full performance is prevented by the one party without fault on the part of the other, may consist of one or the other of two items: first, the profits that would have been realized by the full performance, and second, if there would not have been any profits, or if the proof fails to show what would have been the amount, the reasonable expenditures made, and loss of time, less the value of the material on hand.—*Danforth & Armstrong v. Tenn. & Coosa R. Co.,* 93 Ala. 620; *United States v. Behan,* 110 U. S. 344. Both items are not, of course, recoverable, since the profits would necessarily include the expenditures for tools, etc., less their value at the time the work on the contract ceased. Plaintiff's expenditure for tools, implements, fixtures, etc., was, therefore, a proper element of damages, and while both the elements claimed were not recoverable, defendant was able to protect himself by request for appropriate charges.

The contract contains a provision that "the said ore is

to be mined and put on board the cars free of foreign substance and in a manner satisfactory to the furnace company receiving the same." In view of the subject-matter of the contract, we think it was the manifest intention of the parties, by the use of the words employed, not to impose an obligation on the plaintiff with respect to the manner in which the ore was to be taken from the ground or loaded on the cars, but simply to require him to furnish on board the cars ore free from foreign substance, other than such as was contained in the vein of ore, and satisfactory in this respect alone to the furnace company to which it might be shipped. Thus construed, this clause of the contract was sufficiently complied with by furnishing such ore irrespective of the manner in which it was taken from the ground and loaded on the cars. The defendants sought to justify their action in causing plaintiff to cease work under the contract by a plea averring that "plaintiff failed to mine said ore and put it on board the cars free from foreign substance and in a manner satisfactory to the furnace company receiving the same." A demurrer to this plea having been overruled, defendant replied thereto that he had mined ore under said contract for a period of twelve months, during which time he had delivered to defendants 18,000 tons of ore, and defendants had received and paid for the same amount without any complaint except as to a very small quantity of the ore; that a short time after plaintiff began work under the contract defendant complained of one car of the ore delivered and refused to pay for the same, but plaintiff continued to furnish ore under the contract, and defendant accepted and paid for the same, for a long time thereafter, when further complaint was made; and that plaintiff was at all times ready and willing to mine and deliver ore according to said contract and to rectify any mistake or failure on his part. The overruling of defendant's demurrer to this replication is assigned as error.

The principal question presented by these pleadings is, whether the fact that a small quantity of the ore delivered by plaintiff was not free from foreign substance and satisfactory to the furnace company receiving it, operated as a discharge of the whole contract and authorized defendant to terminate it. The effect of a breach of a contract upon the rights and liabilities of the parties depends upon the nature of the agreement. If the contract

be entire in the sense that each and all its parts are interdependent, so that one part cannot be violated without violating the whole, a breach by one party of a material part will discharge the whole at the option of the other party; but if the contract be severable, susceptible of division and apportionment, the amount to be paid by the one party depending upon the extent of performance by the other, the mere failure to perform a part of the contract in strict compliance with its terms will not of itself necessarily authorize the party injured to refuse further performance.—Wharton on Contracts, §580; 7 Am. & Eng. Ency. Law, (2d Ed.), 150; *Johnson v. Allen*, 78 Ala. 391. Whether a particular contract is entire or severable depends on the intention of the parties to be determined from the language employed and the subject-matter. In the contract sued on plaintiff obligated himself to mine and load on the cars all the ore within a given territory, the ore to be satisfactory to the furnace company to which it might be shipped, but the time and amount of the deliveries, and the time of the completion of the contract were left unfixed, and necessarily the aggregate price to be paid for full performance was not named. No particular amount of ore was to be furnished each month, and a failure to furnish any ore in any one month would not, of itself, amount to a breach of the contract. The defendant's obligation was simply to permit plaintiff to mine all the ore within the territory named, and to pay on the 20th of each month a specified sum for each ton delivered during the previous month. There is nothing in the contract to indicate an intention of the parties that the right of plaintiff to make successive shipments of ore until the contract was completed should be dependent on the mere fact that each and every ton previously mined and shipped was free from foreign substance and satisfactory to the furnace company receiving it, and had been accepted by defendants. The contract was, in its nature, severable and not entire, and the rights and liabilities of the parties are to be determined according to the principles applicable to such contracts. Not every breach of such a contract by the one party will authorize the other to abandon the contract and refuse further performance on his part. The circumstances attending the breach, the intention with which it was committed, and its effect

on the other party and on the general object sought to be accomplished by the contract, must be considered in determining whether or not the breach will operate as a discharge. If the circumstances are such as manifest an intention on the part of the party in default to abandon the contract, or not to comply with its terms in the future, or if, by reason of the breach, the object sought to be effected is rendered impossible of accomplishment according to the original design of the parties, the breach will operate as a discharge of the whole contract unless waived; but no such result follows from a mere breach of a severable contract unattended with such circumstances or such effect. The right to claim a discharge of the whole contract depends, not on whether the act constituting the breach was inconsistent with the terms of the contract, but whether it was inconsistent with an intention to be further bound by its terms, or whether the breach was such as to defeat the purpose of the contract. The mere fact that a small quantity of the ore delivered to defendant was not free from foreign substance and satisfactory to the furnace company receiving it, did not give defendants any right to forbid plaintiff to continue mining ore under the contract.—*Blackburn v. Reilly,* 47 N. J. Law, 290; *Cohen v. Platt,* 69 N. Y. 348; *Scott v. Kittaming Coal Co.,* 89 Pa. St. 231; *Mersey Steel & Iron Co. v. Naylor,* 9 App. Cas. 434; *Lake Shore & M. S. R. Co. v. Richard,* 30 L. R. A. notes; 7 Am. & Eng. Encyc. of Law, (2d Ed.), 150. Against the natural and ordinary injury flowing from such breach, defendants had an adequate protection and remedy—the refusal to receive and pay for the unsatisfactory ore, or their action for the breach in this respect. If any extraordinary injury arose therefrom, the effect of which was to defeat the purpose of the contract, the pleadings fail to show it, and it cannot be inferred from the nature and subject-matter of the contract. It results that the demurrer to the replication was properly overruled. If the plea be construed as averring that plaintiff failed to furnish *any* ore that was free from foreign substance and satisfactory to the furnace company, the replication denies the averment by alleging that defendant accepted and paid for 18,000 tons without complaint, and avers facts which negative any intention on the part of plaintiff in furnishing the ore complained of to be no longer bound by the terms of

the contract, and there is nothing in the pleadings or in the contract itself to indicate that defendants were so injured by the defaults admitted in the replication as to render it unjust to hold him to the obligation to accept such future deliveries as should comply with the contract. .

From what has already been said, the correctness of the charges given at the request of plaintiff, and of the oral charge of the court, may be determined. Most of them assert the proposition that the mere fact that a few cars of the ore mined and shipped were not free from foreign substance and satisfactory to the furnace company, if the circumstances showed no intention to no longer comply with the terms of the contract, did not of itself authorize the defendants to terminate the contract; and this proposition is in accord with the principles above announced. It is true, in predicating plaintiff's right to a verdict upon the insufficiency of the evidence to reasonably satisfy the jury that plaintiff intended to abandon the contract or no longer comply with its terms, they ignore the effect the defaults may have had upon the defendant and the object sought to be accomplished by the contract, and would, perhaps, be erroneous on this account if the nature of the contract and its subject-matter were such that, considered in the light of the evidence, it could reasonably be inferred that the injury to defendants caused by the defaults defeated the purpose of the contract; but the record furnishes no ground for such inference. Charge 9 asserts a correct proposition. The mere expression by the furnace company of dissatisfaction with the ore would not authorize a termination of the contract. It is only the actual existence, not the mere expression, of dissatisfaction, regardless of its reasonableness, that can have this effect, and it was for the jury to say whether this dissatisfaction did exist as a fact, or whether it was expressed as a mere pretext. *Electric Light Co. v. Elder Bros.*, 115 Ala. 138. The charges requested by appellants were properly refused. Appellee had a right under the contract to mine all the outcrop ore within the described territory back to a face of fifteen feet, and this right was not affected by the fact that he had mined some ore beyond the territory described, or mined in some places within the territory back to a face of more than fifteen feet. If there were

some places within the territory not mined back to such a face, appellee had a right to mine them to the extent stipulated in the contract, notwithstanding a face of more than fifteen feet was reached in other places, and this right was not exhausted by the fact that the ore mined outside the territory and beyond the stipulated face, added to that mined within the territory and the fifteen feet facing, was equal in amount to all the ore that could have been properly mined in accordance with the terms of the contract.

Many of the assignments of error relate to evidence concerning the quality of the ore. If, by the questions relating to the quality of the ore, it was intended to elicit evidence as to the amount of metallic iron contained therein, they called for irrelevant testimony, and the objections thereto should have been sustained. But it does not clearly appear that such was the intention, and such evidence was not elicited by the questions. Both parties treated the last clause of the contract as meaning that the ore should be free from foreign substance, and in this respect only satisfactory to the furnace company receiving it, and the court, at the request of appellee, charged that it was immaterial what was the quality of the ore itself. These assignments of error are not, therefore, well taken. The declarations of the superintendent of the furnace company receiving the ore, made while receiving it, tending to show that it was satisfactory, were competent and material. Testimony as to the amount expended by appellee for rails for the side-track was also relevant on the question of damages. The testimony tends to show that the expenditure for this purpose was necessary, and this expenditure was one element of damages recoverable in the event no loss of profits was proven. As stated above, appellant could have protected himself by requesting an appropriate charge. We are unable to perceive the relevancy of the testimony of McCormack, the general manager of the Tennessee Coal & Iron Co., to which all the ore was shipped, that he wanted plaintiff "to take a contract at a reduced price with the Tennessee company, at less than 50 cents a ton." The evidence was doubtless offered on the theory that the willingness of the furnace company which had received the ore mined by plaintiff under this contract, to employ him to mine ore under a contract

with it at a less price, was evidence tending to show that all the ore shipped by plaintiff was satisfactory to said furnace company, but we are of the opinion no such inference can reasonably be drawn from the evidence, and that the court below erred in admitting it. With this exception, we find no error in the record.

### On Application for Rehearing.

PER CURIAM.—McCormack was the defendant's witness, and had testified in their behalf to his dissatisfaction with the ore mined and delivered to his, the witness', company by the plaintiff—to dissatisfaction both as to the percentage of metallic iron in the ore itself and to plaintiff's manner of mining the ore in respect of refuse left in the output. Of course, as held in the original opinion, the testimony of McCormack, elicited by the defendant, that he had proposed to plaintiff, after the time of his alleged dissatisfaction, "to take a contract at a reduced price with the Tennessee (witness') Company to mine ore at less than fifty cents a ton," was not competent as original evidence upon any issue in the case. But we are now of opinion that coming, as it did, on the cross-examination by plaintiff of defendants' witness, it was clearly competent as weakening the force of the witness' testimony in chief as to his dissatisfaction with plaintiff's methods in the mining of ore.

We therefore conclude, on the application for rehearing, that this evidence was properly received. The judgment of reversal is set aside; and the judgment of the city court will be

Affirmed.