# Jones v. Lanier.

## Assumpsit.

(Decided June 8, 1916.  Rehearing denied December 30, 1917. 73 South. 535.)

1. **Sales; Breach of Contract; Damages.**—Where the action was for breach of contract to buy coal to be mined the seller could not recover both unearned profits and the money expended in preparing to mine the coal since a recovery of profit would necessarily include losses due to expenditures in preparation.

2. **Contract; Instruction.**—Where a party obligates himself to furnish labor and material for a compensation, payment to be made on the contingency of the buyer being satisfied he will not be protected from the injurious consequences.

3. **Same; Sales; Rescision; Grounds.**—Where a party buys or agrees to buy the entire output of a coal mine for a specified time at a specified price, subject to the coal proving entirely satisfactory, and it appears that he purchased the coal for resale, which fact was known to the seller and that on account of the quality of the coal he was unable to sell it to his customers he may rescind the contract.

4. **Same; Construction; Certainty.**—The courts cannot set up a new contract but will, if possible, give a contract such construction as will make it certain.

5. **Sale; Option; Right to Cancel.**—Where the buyer contracted to take and pay for the entire output of the seller's coal mine, subject to the coal proving entirely satisfactory the contract was optional with the seller and the buyer could cancel the contract at his option at any time before he had received a benefit under it or the seller had suffered detriment by performance.

6. **Same; Breach; Damages.**—Where the buyer bought subject to the coal proving entirely satisfactory to him and about four months afterwards gave notice that the contract was cancelled, the seller was not entitled to recover either unearned profits or damages on account of his expenditures in preparing to mine the coal.

(McClellan, J., dissents.)

[Jones v. Lanier.]

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. Smith.

Action by S. H. Jones against Sterling S. Lanier for breach of contract to purchase coal. Judgment for defendant and plaintiff appeals. Affirmed.

FINCH & PENNINGTON and J. S. GILLIESPIE, for appellant. STOKELY, SCRIVNER & DOMINICK, for appellee.

SAYRE, J.— (1) This was an action by appellant against appellee to recover damages for the alleged breach of an agreement by which appellee assumed to take and pay for the entire output of appellant's Baker's Creek mine for nine months at a stipulated price per ton, subject to appellant's coal "proving entirely satisfactory" to appellee. The complaint alleged that paintiff expended large sums of money in opening his mine and in the purchase of machinery and mules wherewith to carry out his contract, and did mine and furnish to defendant under the contract a large quantity of coal which was accepted by defendant. There was, however, no averment that defendant had breached the contract by failing or refusing to pay for any coal delivered to him. The breach alleged was that after the parties had acted under the arrangement for about four months the defendant gave notice that the contract was canceled and that he would not accept or pay for any more coal. In the first count of the complaint plaintiff laid his damages "in the loss of profits that he would have made in the sale of the coal that he would have mined and furnished the defendant under said contract." The report will show the first count as amended. In the other counts plaintiff claimed damages in the loss of profits he would have made, and besides on account of money expended as aforesaid. It thus appears that two questions were raised on the face of the record, to-wit, whether plaintiff had a cause of action for unearned profits, and whether, in default of that, he might recover for money expended in preparing to mine coal for defendant. Both items were not recoverable, of course, since a recovery of profits, estimated as upon the complete execution of the agreement according to the original understanding of the parties, would have necessarily included expenditures for preparation, less the values they left in the hands of plaintiff at the time the work on the contract ceased.—*Worthington v. Gwin,*

119 Ala. 44, 24 South..739, 43 L. R. A. 382.   Defendant's contention is that by the agreement he was constituted the sole judge whether or not plaintiff's coal was satisfactory, and for that reason he cannot be held liable on any account.   One of his grounds of demurrer to the complaint also took the point that the so-called contract left it with him to determine how much coal he would take.

(2) Such agreements, like all others, are enforceable according to the true intent of the parties.  If a party voluntarily assumes the obligation and risks of an agreement by which he undertakes to furnish labor and material for a compensation, the payment of which is made dependent on a contingency so hazardous or doubtful as the approval or satisfaction of the other party, his legal rights are to be determined according to its provisions fairly construed, and against the consequences resulting from his bargain the law can afford him no relief.—*McCarren v. McNulty*, 7 Gray (Mass.) 139.   The difficulty of such cases lies in ascertaining the real intention of the parties.  Rules laid down for such cases are really rules of interpretation, and these are applied according to the situation of the parties and the purposes they may appear to have had in view when entering into the contract.  This court seems to have accepted this general proposition, that to justify one party in his rejection of labor performed and material furnished by the other on the ground that they were not satisfactory, as the contract provided they should be, it must appear that the party seeking to avoid payment, according to the stipulation on his part, was in good faith dissatisfied and for some beter reason than that he merely desired to avoid liability.—*Electric Light Co. v. Elder*, 115 Ala. 138, 21 South. 983; *Worthington v. Gwin, supra; Higgins Mfg. Co. v. Pearson*, 146 Ala. 528, 40 South. 579.   This doctrine is generally stated in substantially this form, that, to avoid liability after performance, the dissatisfaction of the party for and to whom work is done and material furnished must be genuine and caused by such defects or omissions as would cause a reasonable man to be dissatisfied.—3 Page on Contracts, § 1390.  But it is commonly held that where the contract involves things intended to satisfy personal taste or feeling the party to whom they are furnished is the free and exclusive judge whether they are satisfactory ; and substantially the same rule seems to be maintained in cases where machinery or special appliances have been fur-

nished and the party to whom they are furnished, after fair test, alleges his dissatisfaction with their mechanical utility or operative fitness for the purposes intended.—*Electric Light Co. v. Elder, supra;* 3 Page on Contracts, supra; 9 Cyc. 618-620; 6 R. C. C., p. 953, § 334.

(3) Defendant contracted—if contract there was—to take the output of plaintiff's Baker's Creek mine, and upon this alone it might appear that he bound himself to take the coal from that mine whatever its quality. But he also exacted the stipulation, which occupied the leading place in his contract and upon which his obligation was made to depend, that plaintiff's coal should prove entirely satisfactory. Assuming that the paper writing set out in the complaint discloses the entire meaning of the agreement into which the parties entered, it may be that plaintiff could not, on this record, avoid the full effect of this stipulation according to its prima facie import. At any rate, the defendant in his fourth plea averred that the coal was purchased for resale, which fact was known to plaintiff, and that on account of the quality of the coal, he (defendant) was unable to sell any more of it to his customers, and for this reason it was not satisfactory. This averment, if sustained by the jury, introduced a new element into the construction of the agreement in virtue of which at least, very clearly, we think, defendant had a right to countermand further shipments, in effect, to rescind the contract as for a lack of performance on plaintiff's part.

(4-6) Plaintiff's claim in this case is affected by another consideration—the uncertainty of the alleged contract. The court will lean to that construction which will make the contract certain; but it cannot set up a contract for the parties. Pretermitting the requirement that the coal should be entirely satisfactory, defendant's proposal amounted to this, that he would take and pay for all coal as it might be mined and tendered by plaintiff. But by neither the express terms nor the legal effect of the alleged agreement was plaintiff bound to mine any coal. Of course the parties expected and intended that plaintiff would operate his mine; but the extent and result of that operation was not fixed by the contract. For aught appearing on the face of the contract, its execution was optional with plaintiff. Had he not operated his mine at all, or had he found it unprofitable and for that or any other reason ceased to operate it at any time during the nine months, defendant could not have recovered damages for his

failure. This results from the principle that where no breach of a contract could be assigned which could be compensated by any criterion of damages furnished by the contract itself, the contract is void for uncertainty.—*Pulliam v. Schimpf*, 109 Ala. 179, 19 South. 428; *Elmore, Quillian & Co. v. Parrish Bros.*, 170 Ala. 499, 54 South. 203. At the time of entering into the contract, each of these promises, such as they were, being then executory, constituted the sole consideration for the other.—*Eskridge v. Glover*, 5 Stew. & P. 264, 26 Am. Dec. 344; *Comer v. Bankhead*, 70 Ala. 136; *Howard v. E. T., V. & G. R. R. Co.*, 91 Ala. 268; 8 South. 868. Defendant would have had the right, therefore, to cancel the agreement at his option at any time before he received a benefit under it or plaintiff suffered legal detriment by performance on his part.—Authorities last above. When, however, the party not bound nevertheless performs in reliance upon the understanding, his performance raises a new consideration for the promise of the other party. The contract, so to speak of the agreement in this case, had it been certain, would have been severable, that is, defendant would have had no right to claim a discharge of the whole on the ground that plaintiff may have furnished small quantities of unsatisfactory coal. But it was uncertain, and defendant assumed no legal obligation in respect of any quantity of coal until it was tendered, and then it was subject to rejection if not entirely satisfactory. In other words, defendant had the right at any time to cancel the contract, subject only to liability to the extent plaintiff had already performed it satisfactorily.—*Howard v. E. T., V. & G. R. R. Co.*, *supra*. It results from these principles and the nature of the contract alleged in the complaint that, as matter of law, the plaintiff was not entitled to recover on account of profits he would have earned on coal he would have mined, and this conclusion it is the duty of the court here to enforce, however the question is presented.—*Pulliam v. Schimpy*, *supra*.

The cases upon which plaintiff relies do not sustain his right to recover unearned profits in the circumstances of the case at hand. In *Worthington v. Gwin* the plaintiff had entered into a definite undertaking to mine and deliver a certain specified body of ore (belonging, we infer, to the defendants, or under their control) an agreement capable of enforcement by an action for damages against him in the event he failed to perform. And in that case, we may note in passing, the court construed the stipu-

lation that "the said ore is to be mined and put on board the cars free of foreign substance and in a manner satisfactory to the furnace company receiving the same," as meaning no more than that plaintiff was to furnish the ore free from foreign substance other than such as was contained in the body of ore with reference to which the contract was made. In the other two (*Electric Light Co. v. Elder*, and *Higgins Mfg. Co. v. Pearson*) the plaintiffs had actually furnished labor and material in the execution of their certain contracts, and the sole question at issue was whether the defendants had any sufficient reason for dissatisfaction with what they had got. Here the question raised by the claim for unearned profits is settled against plaintiff by the reasoning of the other cases to which we have referred, and by *Christie, Lowe & Heyworth v. Patton*, 148 Ala. 324, 42 South. 614, a case, in its law and facts very closely in point, for in that case, as in this, there had been a partial performance. That case has been quoted with approval in *Shannon v. Wisdom*, 171 Ala. 409, 55 South. 102, and *McGowin Lumber Co. v. Camp Lumber Co.*, 192 Ala. 35, 68 South. 263. As for *McIntyre Lumber Co. v. Jackson Lumber Co.*, 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66, the plaintiff in that case had manufactured a certain number of ties under an optional contract before it had notice that defendant would take no more. The court's ruling was just this, that for the ties thus manufactured the defendant should be held to pay. The court said: "All contracts or agreements of this nature are indefinite and uncertain in their incipiency, but if they are capable of being made certain, and are made certain by words or deeds of the parties, they are thereafter binding on both parties. There are many contracts of this kind—options, contracts to purchase the output or products of certain plants, etc.—where the quantity of the purchase is in its very nature uncertain until the article is produced; but, after this term is made certain, the contract is as binding as any other."

In *Sheffield Co. v. Hull Co.*, 101 Ala. 477, 14 South. 672, to which we have been referred, the contract was for the sale and purchase of a specified number of carloads of coke, and it was competent to show what a carload meant. In that case the contract depended upon a contingency—i. e., that plaintiff should be able to induce third parties to build additional ovens. Afterwards, in the express terms of a new agreement and by conduct both parties treated the contract as binding without reference

to the contingency, and the court held that thereupon it became the absolute contractual duty of the plaintiff to deliver and of the defendant to receive the quantity of coke specified in the writings. Our conclusion upon consideration of the authorities is that the legal effect of the contract alleged in the complaint was to leave in each party the option at any time to discontinue performance under it, and this, very evidently, is the view defendant took of it when he gave notice that he would take no more coal.

Plaintiff's damages alleged in the way of unearned profits having thus gone by the board, it follows that he could not recover damages on account of his expenditures by way of preparation. It appears upon the face of the contract that the parties contemplated that plaintiff would make preparation, but he was not bound to do so, as the trial court instructed the jury; and if he did, he looked to his anticipated profits as the only source of reimbursement, and had no right to look elsewhere. His claim of damages on account of expenditures made, had there been a certain contract, would have been allowable as an alternative compensation for unearned profits only in case and because he was unable to prove what such profits would have been. But the right to recover damages of either sort depended upon proof that defendant had breached his obligation as a condition precedent. We think we have shown that defendant was under no obligation to continue to receive coal of any character under the contract after the notice complained of as a breach. He could not, therefore, be held responsible for the money expended by plaintiff in preparation for the contract. His loss, if any he suffered, must be attributed to the injudicious or indiscreet nature of the contract he made. But of that he judged for himself. Where parties have entered into written engagements with express stipulations, these cannot be changed by implication. The presumption is that, having expressed some, they have expressed all the conditions by which they intended to be found.—*Blackman v. Dowling*, 63 Ala. 304. A party is not bound to do that which is not within the stipulations of the contract, whatever may have been the expectation and understanding of the other party.— *Johnson v. Sellers' Adm'r*, 33 Ala. 265. Plaintiff must be held to have known that defendant might withdraw from this agreement at pleasure. He also knew, since the agreement so provided, that any compensation or reimbursement for expenses he expected to earn was subject to the contingency that the coal

produced would be satisfactory to defendant within the meaning of that term as defined by the courts in such cases. Under his agreement he could not avoid these risks. His expenditures were made subject to these contingencies.

The jury found for defendant under instructions (shown by the record) that were necessarily more favorable to plaintiff than they ought to have been, since the question at issue was submitted to them as a question of fact. This appeal is upon the record proper; we have not before us the evidence, nor any bill of exceptions; but, considering that the evidence was limited by the allegations of the complaint, it must have appeared that plaintiff was not entitled to recover, and thus it now appears that the jury gave substantial effect to the defense insisted upon and upon which as matter of law the defendant was entitled to prevail.

It results that the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur. GARDNER, J., concurs in the conclusion. McCLELLAN J., dissents.

GARDNER, J.—I concur in the affirmance in this case, but not in the opinion of the majority. I am of the opinion that the pleas were not subject to any assignment of demurrer addressed thereto, and that the demurrers to the replications were properly sustained. I do not, therefore, find any ruling of the court on the pleading calling for a reversal, and for this reason concur in the result of the appeal.

McCLELLAN, J.— (dissenting.)—This was an action for damages for breach of a contract. The appellee (defendant), and another not now concerned, agreed to buy the entire output of the appellant's coal mine, during the period from October 1, 1913, to June 30, 1914, at the price of 95 cents per ton f. o. b. mines, subject "to your [appellant's] coal proving satisfactory," and "preparations being made," by appellant, "according to our [defendant's] specifications," and stipulating for monthly payments for coal shipped by plaintiff, the bills of .lading to show defendant as shipper, and the plaintiff engaging to "furnish us [defendant] a daily report as per the blank which we have fur-.

[Jones v. Lanier.]

nished you [plaintiff]," and the plaintiff further agreeing "to stand any reclamations on account of off-grade coal, and to stand ready and willing to prepare the coal in a proper and marketable manner." The complaint contains three counts. In all of them the allegation is that plaintiff not only fully performed his part of the contract for approximately four months, the defendant receiving large amounts of coal delivered under the contract, but also that he was ready and willing to perform his part of it for the remainder of the period stipulated by the parties to the agreement. It is further averred in the several counts that the plaintiff spent a large sum of money, approximately specified in the counts, in "equipping himself with the necessary machinery, mules, and other implements for the carrying out of his part of said contract," and that plaintiff "spent the sum of, to-wit, one thousand dollars ($1,000) *in opening up a mine so that he could mine the coal necessary to fulfill his part of said contract."* (Italics supplied.) The breach charged is that on, to-wit, February 24, 1914, the defendant notified plaintiff he would not longer carry out his part of the contract, and that the contract was canceled. The only damages claimed in the first count is the loss of profits he would have made had defendant not prevented plaintiff's performance of his part of the contract. But the damages claimed, as upon appropriate averments, in the second and third counts, are not limited to the loss of profits as in the first count. In the second and third counts the damages accruing for expenditures made by plaintiff in preparation for his performance of the contract—including the "opening up of a mine so that he could mine the coal necessary to fulfill his part of said contract"—are expressly averred and claimed. There was judgment for the defendant. The appeal is on the record. There is no bill of exceptions. The only errors assigned, and the only arguments made in the briefs for the parties, relate to rulings of the court on demurrers to pleas 2, 3, and 4, and replications to those pleas. Since the only questions of law raised and made by these rulings on the sufficiency of the mentioned pleadings did not involve inquiry into or doubt of the binding quality of the contract averred, it is quite probable a bill of exceptions would have been taken to show the situations, purposes, and circumstances surrounding the parties when they made the agreement as well as their subsequent acts under and in interpretation of it, had the plaintiff been at all warned in the trial court

that there would be any doubt of mutuality in the contract averred.—*Mason v. Ala. Iron Co.*, 73 Ala. 270, 274. There it was said: "In the construction or interpretation of all contracts, oral or written, the object is to ascertain, and, if possible, to effectuate the intention of the parties, so that performance may be enforced according to the sense in which they mutually understood it at the time it was made. It is necessary not only to read and examine the mode in which the contract is expressed, but to consider the situation of the parties, the subject-matter, and the object it is intended to accomplish."

Doubtless, evidence available to the parties would disclose their intention in stipulating for "preparations being made according to our [defendant's] specifications," and that the plaintiff would "furnish us [defendant] a daily report as per the blank which we [defendants] have furnished you [plaintiff]." It is the judicial duty to ascertain the intention, and to give effect to the lawful intention of the contracting parties to the end that the obligations assumed by them may be found and appropriately enforced. Intention is the parent of obligation assumed; and if the parent is known, the offspring is generally readily found. "A promise is a good consideration to support a promise."—*Evans v. C., S. & M. Ry. Co.*, 78 Ala. 341, 345. "If the party in whose favor such unilateral promise is made, accepts its performance, or does any act in recognition of its implied or intended, though unexpressed consideration, this supplies the element of mutuality, and gives a right of action."—*Pratt Consol. Coal Co. v. Short*, 191 Ala. 378, 68 South. 67; *Sheffield Fur. Co. v. Hull Coal Co.*, 101 Ala. 446, 447, 14 South. 672; *McIntyre Lumber Co. v. Jackson Lumber Co.*, 165 Ala. 268, 274, 51 South. 767, 138 Am. St. Rep. 66. In *Evans v. C., S. & M. Ry. Co., supra*, STONE, C. J., writing to the point of mutuality vel non in the contract there under review, said: "The whole doctrine, however, rests mainly on the absence of consideration to support the promise; there being no corresponding promise to uphold the promise declared on. Hence, where there is a consideration, the rule (i. e., that both parties must be bound else neither is bound) does not apply."

The Chief Justice then set forth the language above quoted in *Pratt Consol. Coal Co. v. Short, supra*. The doctrine of our cases, cited above, is in accord with authority, generally. See 9 Cyc. pp. 333, 334, and notes; 6 R. C. L. §§ 93, 94; *Herrick v.*

*Wardwell,* 58 Ohio St. 294, 50 N. E. 903; 1 Par. on Contr. p. 451; *Stahl v. Van Vleck,* 53 Ohio St. 136, 148, 41 N. E. 35; *Des Moines R. R. v. Graff,* 27 Iowa 99, 1 Am. Rep. 256; *Burgess Fibre Co. v. Broomfield,* 180 Mass. 283, 286, 287, 62 N. E. 367. "The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained. * * * If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: First, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot be recovered. * * *" If damages by way of lost profits are "not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has voluntarily stopped the performance of the contract, can show the contrary. * * * But failure to prove profits will not prevent the party from recovering his losses for actual outlay and expenditure."—*U. S. v. Behan,* 110 U. S. 338, 344, 345, 4 Sup. Ct. 81, 83 (28 L. Ed. 168); 1 Suth. on Dam. § 80.

In view of the allegation of, and claim for, damages (set forth in the second and third counts) for expenditures made by the plaintiff in preparation for performance of the contract and employed in the actual performance thereof for a good part of the period provided in the contract, it is an obvious error, contradictory of two counts of the complaint, to accept as a premise for a conclusion practically destructive of the contract (except as fully executed for a part only of the period) that only loss of profits is claimed in the complaint. If there was a binding contract between the parties, then the general rule for the admeasurement of damages for its breach (if it was breached without fault on plaintiff's part) has application; and the necessary result must be that a decision predicated of the notion that only loss of profits is asserted and claimed as an element of damages in the complaint, is manifestly ill-advised and unsound. Aside from other considerations that disclose the complete inapplication to the contract in question of the decision in and doctrine of the case of *Pulliam v. Schimpf,* 109 Ala. 179, 19 South. 428, and

any others that accord with its authority, the assertion of a claim for expenditures made by the plaintiff to perform, and in performance of, the agreement forbids the acceptance of or reliance upon the doctrine of *Pulliam v. Schimpf* as any measure of authority for a conclusion that the second and third counts state no cause of action for a breach of the contract therein alleged. In *Pulliam v. Schimpf* the agreement there considered was held to be ineffectual because of its inherent uncertainty; not because of a want of mutuality, and that uncertainty was found, as correctly stated in *Christie, et al. v. Patton*, 148 Ala. 326, 327, 42 South. 614, in the provision of the agreement stipulating for its duration. The decisions in *Erwin v. Erwin*, 25 Ala. 236, and in *Howard v. Railroad Co.*, 91 Ala. 268, 8 South. 868, were controlled, as is accurately pointed out in the *Christie-Patton Case*, 148 Ala. 327, 42 South. 614, by the fact that no definite period of time was provided during which the agreement should continue. The contract here involved is not subject to the infirmity found in the cases ante reported in 109, 91, and 25 Ala. Reports. This contract is absolute in its definite provision for its continuance. Besides the vital differences in the terms of the contract here involved and those considered by this court in the *Christie-Patton Case*, in *Pulliam v. Schimpf*, in *Erwin v. Erwin*, and in *Howard v. Railroad Co.*, will readily appear to the reader. The conclusion and the decision attained in the *Christie-Patton Case* is thus expressed on page 329 of 148 Ala., page 616 of 42 South.: "Granting, therefore, that the transaction amounted to a contract, it is wholly indefinite as to its duration, and therefore lacked one of the elements necessary to any estimate of damages."

This statement of conclusion accords with the court's plainly stated purpose (see page 327 of 148 Ala., page 614 of 42 South.) to follow and apply the doctrine of *Pulliam v. Schimpf*, *Erwin v. Erwin*, and *Howard v. Railroad Co.* The case of *Elmore v. Parrish*, 170 Ala. 499, 54 South. 203, is likewise without application to the contract here involved, for, apart from obvious differences in the nature and terms of the contract there under consideration (set forth in counts 2 and 4) and that here involved, the decision was that the contract was void for uncertainty in respect of the price and of the weight of the bales of cotton. Here the price of the coal was fixed by the express agreement of the parties; and the subject-matter of the contract

was the entire output of the mine, of a stipulated character of coal, for and during a specified period. The contract alleged in the counts before this court cannot be soundly pronounced void for want of mutuality on authorities that deal with and decide only that contracts, different from this one, were void for uncertainty in respect of the subject-matter, or of the period of their continuance, or of the failure to fix a price for the thing to be bought and sold. Uncertainty and mutuality are distinct conceits in the law of contracts, and they should not be confused, if sound, logical conclusions are to be attained. The contract set forth in the several counts of this complaint is certain in every element essential to make a valid, binding contract.

Where a contract is reduced to writing and its terms are unequivocal, unambiguous, nothing can be implied that is not expressed, nor can implication serve to extend the obligations thereof; the presumption being that the parties have expressed all the conditions by which they intend to be bound.—*Blackman v. Dowling,* 63 Ala. 304; *Electric Co. v. Elder,* 115 Ala. 138, 148, 149, 21 South. 983. But where the contract, though written, is susceptible of two constructions, one of which will sustain and the other invalidate it, that which will sustain the contract will be adopted.—*Lively v. Robbins,* 39 Ala. 461, among others. The essential element of mutuality in a contract need not be expressly provided. If the parties intend to make mutual promises and employ terms—in the light of the circumstances surrounding the parties and the purposes entertained by them— that import a meaning to become mutually bound, then the contract is not void for the want of mutuality.—9 Cyc. 333; *Minneapolis Mill Co. v. Goodnow,* 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202. There are at least two provisions in the letter, setting forth the terms of the agreement, which deserve to be considered in determining the mutuality vel non of the contract the moment it was made by the parties. These provisions show unmistakably that the plaintiff bound himself, promised the defendant to make "preparations" to mine the coal in plaintiff's mine "according to" the defendant's "specifications," and also bound himself "to furnish" defendant with "a daily report as per the blanks which" defendant should furnish the plaintiff. If the latter provision contemplated, as in the absence of all evidence it is fair to assume was the purpose in so stipulating, a daily report of the operation of the mine, to the end that the

buyer (defendant) might promptly know the tonnage to be expected, it is quite clear that, necessarily, the plaintiff obliged himself, promised the defendant, to steadily operate his mine during the period stipulated, else he could not make the daily report he engaged to furnish to the defendant; and the correctness of this conclusion finds further confirmation in the other provision, not explained to this court by evidence of any character, that required the plaintiff to observe "specifications" made by the buyer, the defendant. Since we have no bill of exceptions showing what these "specifications" contained or what particular matter the daily report concerned, it should not be inferred against the validity of the agreement that these provisions, which might be fully explained by appropriate evidence, placed no obligation whatever on the plaintiff to operate his mine that an "output" might be secured by the buyer (defendant) consistent with the manifest purpose of the parties.

If, however, it should be assumed that the plaintiff, at the time they contracted, made no promise to the defendant to operate the "Baker's Creek mine," during the period stipulated, and thereby leaving the promise of the defendant to buy the "output" without the supporting consideration of a correlative promise on the plaintiff's part to operate the mine and thus produce an "output," the doctrine reproduced above from our cases of *Evans v. Railroad, Sheffield Fur. Co. v. Hull Coal Co., Pratt Consol. Coal Co. v. Short,* and *McIntyre Lumber Co. v. Jackson Lumber Co., ante,* must be accorded application and effect to sustain the contract by affording a consideration for defendant's promise to buy the "output," because, as appears from all the counts, the plaintiff expended his funds in preparation to mine the coal and in mining the coal to meet the condition to the defendant's promise to buy the "output," at a specified price per ton, if the coal met the legal standard fixed by the parties for the quality thereof. The defendant having given the promise to buy and the seller having made an outlay to afford the subject of the defendant's promise to buy, "this," to again quote the *Evans Case,* "supplies (supplied) the element of mutuality." The applicable doctrine of the cases mentioned is further illustrated in our case of *Mott v. Jackson,* 172 Ala. 448, 55 South. 528, though not more aptly so at this time than in *Pratt Co. v. Short,* where Short had not promised to mine any coal in the described area; but, having entered upon the work just as if he had originally, expressly

engaged to mine the coal, it was ruled, according to the authority of the cases cited, that this afforded a consideration for the promise he asserted the coal company made to allow him to mine the coal, and that the contract was not void for the want of mutuality.

The second plea asserted that the "quality or condition of the coal mined from defendant's [meaning plaintiff's] said mines did not prove satisfactory to them." The contract declared on submitted the quality of the coal which defendant obliged himself to take, for a definite period at a stipulated price, to the entire satisfaction of the defendant, "preparations being made according to our [defendant's] specifications," and that the plaintiff should "stand ready and willing to prepare coal in a proper and marketable manner." It is manifest from the contract that the satisfaction to which the parties subjected the coal defendant obliged himself to take concerned only the quality of the coal, and that the plaintiff should be accorded adequate opportunity to make the condition of the coal conform to marketable shape. The pleader in the second plea, asserted as the basis for defendant's dissatisfaction with the coal, mined from plaintiff's mines, that its quality or condition was not satisfactory to defendant. Under this contract the character of the satisfaction to which the parties subjected the quality of the coal defendant agreed to take is well defined in *Electric Co. v. Elder*, 115 Ala. 138, 153, 21 South. 983. According to that established authority defendant could not be legally dissatisfied with the quality of the coal tendered by the plaintiff, and thus avoid his obligation to take the coal, unless his dissatisfaction was not capricious, was founded in good faith, was not the result of design to be dissatisfied, but was an honest conclusion consequent upon a reason with respect to the quality of the coal. "If defendant had no reason to be dissatisfied, * * * he was bound to be satisfied."—*Electric Co. v. Elder*, 115 Ala. 154, 21 South. 983. In such pleas "the facts which cause the dissatisfaction" must be stated.—*Electric Co. v. Elder*, 115 Ala. 154, 155, 21 South. 983. The thirteenth ground of demurrer takes the objection that the plea did not set forth "with sufficient definiteness wherein or how the said coal was unsatisfactory to defendants." The ninth, eleventh, twelvth, and fourteenth grounds of the demurrer raised objections of the same general nature. Aside from the possible faults introduced by the general, indefinite averment in the alternative of the condition of the coal as the basis for defendant's

dissatisfaction and by the omission to characterize the defendant's dissatisfaction as bona fide, plea 2 was faulty in its failure to aver the facts that induced the defendant's dissatisfaction with the quality of the coal, rather than, as the plea should have shown, that the quality of the coal was so deficient as to reasonably induce the defendant's dissatisfaction. It seems to me that error affected the action of the court in overruling the demurrer to plea 2.

Pleas 3 and 4 proceed upon a materially different status of contract from that set forth in plea 2, when read in connection with the counts of the complaint. They might have been better framed if they had characterized defendant's dissatisfaction as bona fide; but this objection to these pleas was not taken by the demurrer. I see no error in overruling the demurrers to these pleas (3 and 4.)

I would reverse the judgment. It appears from special charges given to the jury that the court submitted the issues to the jury, thus rendering impossible the application of rule 45 (175 Ala. xxi, 61 South. ix).