The K & F THEATRES COMPANY, a corporation, Appellant,

v.

Walter J. BRADLEY, Appellee.

No. 5551.

United States Court of Appeals Tenth Circuit.

July 13, 1957.

Rehearing Denied Aug. 8, 1957.

Robert B. Moch, Denver, Colo. (Albert J. Gould and Gould, Moch & Schermerhorn, Denver, Colo., were with him on the brief), for appellant.

Norman B. Gray, Cheyenne, Wyo. (Ellery, Gray & Hickey, Cheyenne, Wyo., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

BRATTON, Chief Judge.

Walter J. Bradley, hereinafter referred to as Bradley, instituted this action against The K & F Theatres Company, hereinafter referred to as Theatres Company, to recover damages for alleged breach of contract. Bradley owned the Strand Theatre in Cheyenne, Wyoming, and he was president of a corporation which owned the Paramount Theatre in that city. Both theatres were leased to Theatres Company. The lease covering the Strand Theatre was executed on October 27, 1933. It covered the period from such date to February 29, 1936, and it was periodically extended from time to time. The last extension

was executed on October 6, 1949. It covered the period from February 28, 1950, to February 28, 1955, and it provided:

> "If the Lessor desires to convert the building for commercial purposes, the Lessee will surrender the premises on thirty (30) days' written notice by the Lessor to the Lessee and the Lessee will buy all of the theatre equipment owned by the Lessor and on the premises for the sum of Ten Thousand ($10,000) Dollars."

The operation of the Strand Theatre was not profitable. Up to and including the year 1949, such operation entailed losses aggregating more than $39,000. Theatres Company did not wish to continue the lease after 1949, but it did desire to renew its lease on the Paramount Theatre which expired at the same time; and it could not obtain a renewal of the lease covering the Paramount Theatre without consenting to the renewal of the lease covering the Strand Theatre. Under the terms of the lease covering the Strand Theatre, Theatres Company had the right to assign the lease or sublet the premises or improvements only with the written consent of Bradley. As the result of judicial proceedings, it became necessary for Theatres Company to divest itself of the Strand Theatre. By letter dated December 22, 1954, Theatres Company advised Bradley that it desired to assign the lease and requested his consent. By letter dated December 27, 1954, Bradley consented to the assignment of the lease; but in such letter he served notice that it was his intention to convert the premises from a theatre to a building for commercial purposes, and he directed attention to the fact that under the terms of the lease Theatres Company and its assigns were required to buy and he agreed to sell the equipment owned by him and located upon the premises for $10,000. The letter was signed for Bradley by his son. The reply of Theatres Company was addressed to the son. In such reply, it was stated that the lease had been assigned; and it was further said that Theatres Company had no evidence of the authority of the son to act for Bradley in respect to giving notice of desire to convert the premises to commercial purposes. Under date of January 27, 1955, Bradley wrote a letter addressed jointly to Theatres Company and the assignee of the lease in which notice was given that he desired to convert the building into commercial purposes, demanded surrender of the premises, and demanded payment of $10,000 for the theatre equipment. All rental on the premises was paid to February 28, 1955; and the premises were surrendered to Bradley on that date, but payment of $10,000 for the theatre equipment was refused. After the institution of the action, the parties stipulated that the value of the theatre equipment was $500.

Finding among other things that the refusal of Theatres Company to pay $10,000 for the theatre equipment constituted a breach of the contract, the court entered judgment for Bradley in the sum of $9,500—the amount stated in the agreement less the stipulated value of the equipment. Theatres Company seasonably appealed.

The rights and liabilities of the parties, respectively, have their genesis in the crucial provision relating to termination of the lease. The provision vested in Bradley the right to terminate the lease in the event he determined in good faith to convert the premises into some commercial use other than the operation of a theatre. The right of termination was not carte blanc in character or scope. It was a limited right which could be exercised only in the event Bradley determined bona fide and in good faith to change the use of the premises from that of a theatre to some other commercial purpose. Woods v. Postal Telegraph-Cable Co., 205 Ala. 236, 87 So. 681, 27 A.L.R. 834.

The provision authorizing termination was in force and effect almost five years before any effort was made to exercise the right. The provision required thirty

days' notice. The first notice was sent only about sixty days, and the second only about thirty days, prior to the date on which the lease would expire according to its own terms. At the time each notice was sent, Bradley knew that the termination date of the lease was almost at hand; and he knew that upon such termination, he would obtain possession of the premises and could take immediate steps to convert the property into commercial use of his own choice. But the notices were given despite those significant facts. And at the time of the giving of the two notices no tenant was in prospect. No plans had been prepared or formulated for converting the property into commercial use. No particular changes or improvements had been considered. And no alterations were made for approximately six months after the lease expired. Approximately six months after termination of the lease, certain work was done on the entrance and lobby portion of the building. And about fourteen months after the lease expired, that portion of the building was rented on a month-to-month basis to be used in the operation of a loan or pawn shop. Later, a portion of the building was rented for the operation of a novelty shop. The trial of the case took place more than eighteen months after the expiration of the lease. At the time of the trial, some minor alterations had occurred and some of the personal property such as theatre chairs had been moved from one place to another inside the building. But most of the building was unoccupied and the undisputed evidence was that Bradley did not know even then what he was going to do with the property. When all of these facts and circumstances are considered together as integrated parts of the whole, we think it is clear that the attempted termination of the lease was not in good faith for the purpose of enabling Bradley to convert the premises from a theatre into some other commercial purpose. We think that the

attempted termination was capricious and covinous, intended and designed primarily to compel Theatres Company to pay $10,000 for theatre equipment having a reasonable value of only $500. Termination based upon such an underlying motive was not contemplated or authorized by the letter or the spirit of the agreement. And since the attempted termination was not contemplated or authorized by the agreement, failure and refusal of Theatres Company to pay for the theatre equipment did not constitute actionable breach of the contract for which damages could be had.

The judgment is reversed and the cause is remanded.

MURRAH, Circuit Judge (dissenting).

The trial court specifically found that the notice to terminate, given in accordance with the terms of the contract, was in good faith; and that the lessee thereupon became obligated under the contract to purchase the equipment for the stipulated amount. I am not prepared to say that the trial court's findings in that regard are clearly erroneous. I would therefore affirm the judgment.