BURKE, Judge.
Mollie M. Bearden and Donald Terry Bearden were convicted of reckless endangerment, a violation of § 13A-6-24, Ala. Code 1975, following a bench trial in the Talladega District Court. The Beardens were sentenced to six months in jail. However, their sentences were suspended, and each was ordered to serve six months of unsupervised probation. Additionally, the Beardens were each ordered to pay a $500 fine and court costs. This appeal follows.[1]
The evidence at trial indicated that the Beardens' neighbor, Jill Hyner, left her home in the early morning hours of April 21, 2016, to go to work. Hyner testified that someone shined a bright spotlight from the Beardens' property into her vehicle as she pulled out of her driveway and drove to a stop sign at the end of her street. Hyner stated that the beam of light was initially a single beam but that, at some point, changed to a "strobe light." (R. 24.) The light, according to Hyner, blinded her and hindered her ability to see other vehicles on the road. Hyner testified that this type of incident had happened on other occasions when she left her home in the mornings. A few days before the incident in question, Hyner contacted police who advised her to change her schedule to see if the incidents would stop. However, Hyner testified that someone on the Beardens' porch continued to shine a spotlight into her car despite her altered schedule. Based on that allegation, two police officers set up surveillance in front of the Beardens' house on the morning of April 21, 2016.
Jason Murray, an officer with the Talladega County Drug Task Force, testified that he and another officer sat in the woods across from the Beardens' house in the early morning hours of April 21, 2016. Officer Murray testified that, at approximately 5:15 that morning, Hyner got into her car and left for work. According to Officer Murray, someone from the Beardens' porch then began to shine a light across the fence toward Hyner's house. Officer Murray stated: "As soon as [Hyner] got into the car and pulled out of her driveway, they turned the flashlight back on at the corner of the fence and followed her all the way down to the stop sign until she turned to go out of sight." (R. 74-75.) Officer Murray testified that the beam of light was shining into the driver's side *800 window of Hyner's car and alternated between a single beam of light and a strobe light. Officer Murray and his partner then came out of the woods and approached the Beardens' porch, where they discovered Mollie M. Bearden holding a flashlight. Officer Murray placed Mrs. Bearden under arrest for reckless endangerment.
Further testimony revealed that, on the morning following Mollie Bearden's arrest, Hyner again left for work early in the morning. Hyner stated that, as she drove to work, Donald Terry Bearden followed her in his vehicle for approximately 10 miles. According to Hyner, Donald Bearden followed her very closely and continuously shined his high beams into her car. Hyner stated that the lights caused her to have difficulty seeing road signs and oncoming traffic. Hyner also testified that, at one point, Donald Bearden pulled his vehicle alongside her car causing her to believe that he might try to run her off the road. Additional testimony revealed that the road on which they were traveling was a two-lane road; thus, Bearden was driving in the wrong lane when he pulled alongside Hyner. He was later arrested and charged with reckless endangerment.
I.
On appeal, the Beardens first argue that the trial court erred when it denied their motion to dismiss the cases against them. According to the Beardens, the complaints charging them with reckless endangerment was insufficient because, they claim, it failed to state particular facts regarding the offense. Specifically, the Beardens claimed that the complaint did not disclose the essential facts of the "reckless conduct" they were charged with. Therefore, the Beardens say, they lacked notice of the charges against them.
" '[T]his court has held that a complaint that substantially tracks the language of the statute is sufficient to inform the defendant of the charges against which he must defend.' " Gentile v. City of Guntersville, 589 So.2d 809, 810 (Ala. Crim. App. 1991), quoting State v. Franklin, 541 So.2d 593 (Ala. Crim. App. 1989). The complaint against Mollie Bearden alleged that, "on or about the 21st day of April, 2016, one [Mollie M. Bearden] did engage in reckless conduct, which created a substantial risk of injury to another person to-wit: [Jill Hyner], in violation of § 13A-6-24(a), of the Code of Alabama." (C. 37.) The complaint against Donald Bearden alleged that, "on or about the 22nd day of April, 2016, one [Donald Terry Bearden] did engage in reckless conduct, which created a substantial risk of injury to another person to-wit: [Jill Hyner], in violation of § 13A-6-24(a), of the Code of Alabama." Section 13A-6-24(a), Ala. Code 1975, provides: "A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Thus, the complaints against the Beardens substantially tracked the language of the statute they were charged with violating along with the date the conduct was alleged to have occurred and the victim's name. Accordingly, the complaint was sufficient to put the Beardens on notice of the charges they were called to defend.
Moreover, the record refutes any assertion that the Beardens were not aware of the specifics of the charges against them. As noted, Mollie and Donald Bearden were arrested on April 21, 2016, and April 22, 2016, respectively. Defense counsel entered a notice of appearance seven days after Donald Bearden's arrest on April 29, 2016, and subsequently filed several motions. The Beardens then filed a subpoena request with the Talladega County sheriff's office seeking "any and all incident reports filed by Jill Hyner from *801 January 1, 2014 to present." (C. 46.) Additionally, the Beardens filed a subpoena request with Hyner's employer seeking "Jill Hyner's work hours for each day worked during the period of March 21, 2016 until May 21, 2016." (C. 60.) Further, Mollie Bearden testified that, immediately after she was released from jail, she downloaded video footage from her home-surveillance system depicting the incident in question and provided that footage to her attorney. (R. 118.) Despite being in possession of that video footage before trial, defense counsel told the trial court: "As of this day, I don't know what the allegation is. My clients don't know what the allegation is." (R. 8.) However, when defense counsel played the video for the trial court, he stated, "Judge, I think the video itself is about thirty minutes. But I know where the action starts, so I can cut to the chase." (R. 119.) These facts belie any contention that the Beardens were unaware of the charges they were called to defend.[2]
In Bexley v. State, 705 So.2d 549, 551 (Ala. Crim. App. 1997), this Court addressed a similar issue and concluded that "[t]he appellant has failed to show how his substantial rights were prejudiced by an amendment to the charge against him." In Bexley, this Court examined the record and, based on the pleadings the appellant filed, was "not persuaded by the appellant's claim that he did not have reasonable notice of the charge against him when he proceeded to circuit court." Id. Here, as in Bexley, we have examined the record, and we are convinced that the Beardens were fully aware of the charges against them and that they suffered no prejudice as a result of the trial court's denial of their motion to dismiss the complaints. See also Rule 45, Ala. R. App. P. ("No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.").
II.
Next, the Beardens argue that the trial court erred when it denied their motions for judgments of acquittal because, they claim, the evidence was insufficient to sustain their convictions. This Court has held:
"In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala. Crim. App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala. Crim. App.), cert. denied, 387 So.2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala. Crim. App. 1978). In applying this standard, the appellate court will determine only if legal *802 evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala. Crim. App. 1983) ; Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969) ; Willis v. State. A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Duncan v. State, 436 So.2d 883 (Ala. Crim. App. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984) ; Johnson v. State, 378 So.2d 1164 (Ala. Crim. App.), cert. quashed, 378 So.2d 1173 (Ala. 1979)."
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala. Crim. App. 1993).
"A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." § 13A-6-24(a), Ala. Code 1975. "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." § 13A-2-2(3), Ala. Code 1975. As noted above, Jill Hyner testified that someone on the Beardens' property shined a spotlight into her vehicle while she was driving causing her to become "blinded." (R. 23.) Officer Murray witnessed this event and subsequently discovered Mollie Bearden holding a flashlight on her front porch. Viewing this evidence in the light most favorable to the prosecution, the trial court could have concluded that Mollie Bearden shined a spotlight into Hyner's vehicle, creating a substantial risk that Hyner would wreck her vehicle causing serious physical injury. Based on Hyner's testimony that this type of incident had happened on numerous occasions, the trial court could have determined that Mollie Bearden knew that her conduct created such a risk but that she consciously disregarded it. Accordingly, the trial court did not err in denying Mollie Bearden's motion for a judgment of acquittal.
As to Donald Bearden, the testimony at trial indicated that he followed closely behind Hyner's for approximately 10 miles with his high beams shining into the passenger compartment of Hyner's vehicle. Again, Hyner testified that the bright lights "blinded" her. (R. 27.) Accordingly, there was sufficient evidence to show that Donald Bearden's conduct created a substantial risk that Hyner would wreck her vehicle and be seriously injured. Thus, the trial court did not err when it denied Donald Bearden's motion for a judgment of acquittal.
III.
In its brief on appeal, the State argues-for the first time-that the Beardens' appeal is not properly before this Court because, it says, the record is not adequate as required by Rule 30.2(1), Ala. R. Crim. P.,[3] which provides: "An appeal *803 from the district or municipal court shall go directly to the appropriate appellate court: (1) If an adequate record or stipulation of fact is available and the right to a jury trial is waived by all parties entitled to trial by jury."[4] According to the State, "nothing in the record establishes that the district court authorized an official transcript, appointed an official court reporter or special roving court reporter, or administered the required oath." (State's brief, at 16), citing Ex parte French, 547 So.2d 547 (Ala. 1989). Further, the State argues, "there is no evidence that the private court reporter retained by the Beardens was accepted by agreement of both parties." (State's brief, at 16), citing Ex parte Burnsed, 844 So.2d 526, 528 (Ala. 2001).
However, the record does not suggest, as the State contends, that the court reporter was not an official court reporter authorized by the district court. In reviewing the entire record, there are several instances suggesting that the court reporter who prepared the transcript was an official court reporter authorized by the district court. On the first page of the transcript, the district court judge began the proceedings by stating: "We're on the Record." (R. 6.) Additionally, the district court judge who presided in this matter allowed the court reporter to interrupt the trial numerous times to clarify a witness's answer. See ( R. 37, 40, 43, 45, 60, 61, 68, 152.) Finally, the Beardens completed a "Reporter's Transcript Order" and included it with the docketing statement to this court. (C. 72.) These facts indicate that the court reporter who prepared the transcript was an official court reporter authorized by the district court. Nothing in the record, besides the State's bare assertion on appeal, suggests otherwise. Obviously, it is the State's burden on appeal to ensure that the facts that support its argument are included in the record. Moreover, there has been no showing or indication, at trial or on appeal, that the record taken by the court reporter was not adequate to support an appeal to this Court.
Even if the State were correct in its assertion that the court reporter in this case was not an official court reporter under Alabama law, the record is nonetheless adequate under Rule 30.2(1), Ala. R. Crim. P. The State appears to argue that, in order for the record to be adequate in the present case, there must be some evidence that the Beardens made a formal demand for a court reporter and that the parties agreed to having a court reporter transcribe the proceedings. However, Rule 30.2(1), Ala. R. Crim. P., contains no such requirements nor does the precedent cited by the State. Under Rule 30.2(1), Ala. R. Crim. P., an appeal from the district court, such as this one, shall go to the appropriate appellate court so long as there is "an adequate record or stipulation of fact." Although a stipulation of fact clearly requires an agreement between the parties, an adequate record is supplied when a record is presented without objection or is found to be adequate by a court.
The State appears to cite Ex parte French, 547 So.2d 547 (Ala. 1989), for the principle that an unofficial transcript prepared by a court reporter who has not been appointed in compliance with Alabama law, see § 12-17-270 et seq., lacks guarantees of accuracy, impartiality, and *804 authenticity. However, French and the cases cited therein dealt with situations in which an unofficial transcript was being offered as substantive evidence in a trial or other proceeding. Specifically, the transcript in question in French was being offered as an exhibit to support the defendant's motion for a summary judgment. The Alabama Supreme Court held "that an unofficial transcript, prepared by a person not duly appointed as an official court reporter pursuant to the provisions of Ala. Code 1975, §§ 12-17-270 through 277, or approved by the adverse party or parties, is inadmissible in a subsequent trial." 547 So.2d at 549 (emphasis added).See also Woods v. Postal Telegraph-Cable Co., 205 Ala. 236, 87 So. 681 (1920) (holding that a transcript of a prior proceeding prepared by an unofficial stenographer was hearsay and, therefore, inadmissible at a later trial). Thus, there existed a heightened constitutional standard in those cases because the transcripts were being offered as exceptions to the rule against hearsay and, consequently, required substantial guarantees of trustworthiness or other indicia of reliability. In the present case, the only requirement is that the record be "adequate." Additionally, the relevant parties in those cases objected to the admission of the transcripts in the trial court. Accordingly, French is distinguishable from the present case.
The facts in the present case are nearly identical to the situation in Ex parte Boswell, 558 So.2d 918 (Ala. 1990). After Boswell filed his notice of appeal from a conviction in the district court, the State " 'objected to the record.' " Id. at 919. When the district court then failed to process his appeal, Boswell petitioned this Court for a writ of mandamus directing the district court to process his appeal. The Alabama Supreme Court reversed this Court's denial of that petition and held:
"In the case before us, the proceedings were recorded by a court reporter; the State was represented throughout the proceeding by an assistant district attorney, who offered no objection to the manner of recording the proceeding. After Boswell filed a notice of appeal to the Alabama Court of Criminal Appeals, the trial court noted that the State 'objects to the record.' However, there has been no showing by the State that the record is defective, not substantially true and correct, or otherwise not 'adequate.' See Dobbs v. State Dept. of Pensions & Security, 484 So.2d 1052 (Ala. 1984).
"We have examined the record in this case, including a transcript of the proceedings before the trial court, and we find that the record is an 'adequate record' within the meaning of § 12-12-72(1)."
558 So.2d at 919-20 (footnote omitted).
As in Boswell, the State in the present case "was represented throughout the proceeding by an assistant district attorney, who offered no objection to the manner of recording the proceeding." Id. at 919. The State had several opportunities to object to the court reporter in the district court. First, the State could have objected before or during the trial. The State also could have objected when the court reporter filed the transcript with the circuit clerk. Finally, the State had an opportunity to object when the circuit clerk certified the record on appeal to this Court. However, the State failed to do so. Moreover, the State has not, at trial or on appeal, shown or even alleged "that the record is defective, not substantially true and correct, or otherwise not 'adequate.' " Id. at 920. Accordingly, the State waived any claim to the adequacy of the record.
*805 If the State wishes to object to a private court reporter or later to some aspect of the transcript, then the district court could make a determination concerning the adequacy of the transcript. However, " 'to preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.... An issue raised for the first time on appeal is not correctly before this court.' " McKinney v. State, 654 So.2d 95, 99 (Ala. Crim. App. 1995), quoting Buice v. State, 574 So.2d 55, 57 (Ala. Crim. App. 1990). If the transcript stands as accurate with no specific objection, it is adequate to support an appeal. The State, in this case, was surely aware of the court reporter's presence, allowed the reporter to transcribe the bench trial without objection, allowed the record to be certified by the circuit clerk to this Court, and now submits for the first time on appeal that the court reporter should not have been allowed to prepare a transcript for a direct appeal to this Court. Accordingly, the State has waived any contention that the record is not adequate because the court reporter was not properly appointed according to both parties.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.
Joiner, J., concurs. Windom, P.J., concurs in the result. Kellum, J., dissents, with opinion. Welch, J., joins in dissent.
Because I believe that the record was inadequate to confer jurisdiction of this appeal on this Court pursuant to Rule 30.2, Ala. R. Crim. P., I must respectfully dissent.
An appeal directly from the district court to this Court must be perfected in accordance with Rule 30.2, Ala. R. Crim. P. See also § 12-12-72, Ala. Code 1975. Rule 30.2 states:
"An appeal from the district or municipal court shall go directly to the appropriate appellate court:
"(1) If an adequate record or stipulation of fact is available and the right to a jury trial is waived by all parties entitled to trial by jury, or
"(2) If the parties stipulate that only questions of law are involved and the district court or the municipal court certifies the question."
The requirements set forth in Rule 30.2 must be satisfied before this Court acquires jurisdiction of an appeal from a district court or municipal court. See Lucas v. City of Tuscaloosa, 680 So.2d 1027 (Ala. Crim. App. 1996).
The State contends that the Beardens' appeal should be dismissed because, it says, they have failed to comply with Rule 30.2(1), Ala. R. Crim. P., in that the record is inadequate and no stipulation of fact was made in preparation for appeal. Although the record contains a transcript of the trial proceedings, the State contends that the transcript was prepared by a private court reporter who was not appointed by the district court, was not administered an oath, or was not authorized to prepare an official transcript of the proceedings. Further, the State contends that there was no evidence indicating that the private court reporter was accepted by an agreement of the parties or that the Beardens demanded the district court provide a court reporter or a reporter's transcript in this case.
In response to the State's challenge to the adequacy of the record, the Beardens contend that the court reporter's transcript provides an adequate record on appeal. Citing Ex parte Boswell, 558 So.2d 918 (Ala. 1990), the Beardens contend that the State did not object during or after *806 trial to the court reporter's transcribing the proceedings in district court. Further, the Beardens contend that the State made no motion or objection to the use of the court reporter's transcript during the pendency of this appeal, and the State did not challenge the accuracy of the court reporter's transcript contained in the record on appeal. See Ex parte Burnsed, 844 So.2d 526 (Ala. 2001).
In Ex parte French, 547 So.2d 547 (Ala. 1989), a case relied on by the State, the petitioner filed an action in the district court alleging breach of contract. The district court ruled against French, and he appealed to the circuit court for de novo proceedings. The circuit court considered a transcript of the district-court proceedings that was transcribed not by an official court reporter but by a court reporter employed by French. The Alabama Court of Civil Appeals affirmed the circuit court's judgment, but the Supreme Court reversed the Court of Civil Appeals' affirmance, holding:
"[A]n unofficial transcript, prepared by a person not duly appointed as an official court reporter pursuant to the provisions of Ala. Code 1975, §§ 12-17-270 through -277, or approved by the adverse party or parties, is inadmissible in a subsequent trial. The appointment by the court of an official reporter, § 12-17-270, and the oath taken by the reporter, § 12-17-273, serve as protections to both parties, ensuring the accuracy and impartiality of the reporting. On the other hand, a transcript by a reporter hired and paid by one party has no such guarantee of authenticity, and the opposing party is provided no protection from possible errors or even fraud."
French, 547 So.2d at 549.
In Ex parte Boswell, 558 So.2d 918 (Ala. 1990), Boswell was convicted of possession of marijuana in the second degree and sought to appeal directly from the district court to this Court. The district court "denied" Boswell's notice of appeal, and Boswell petitioned this Court for a writ of mandamus. Although it is not clear from the opinion, it appears that the "denial" of the appeal was based on the State's objection to the record and the State's failure to waive the right to a jury trial. Addressing the State's objection to the record, the Supreme Court stated:
"[ Section 12-12-72, Ala. Code 1975,] does not provide for an 'objection to the record' but rather requires in the alternative 'an adequate record' or a 'stipulation of facts.' In the case before us, the proceedings were recorded by a court reporter; the State was represented throughout the proceeding by an assistant district attorney, who offered no objection to the manner of recording the proceeding.[1] After Boswell filed a notice of appeal to the Alabama Court of Criminal Appeals, the trial court noted that the State 'objects to the record.' However, there has been no showing by the State that the record is defective, not substantially true and correct, or otherwise not 'adequate.' See Dobbs v. State Dept. of Pensions & Security, 484 So.2d 1052 (Ala. 1984).
"[1] It appears that Boswell and the State each agreed to pay one-half the cost of hiring the court reporter. Thus, this case is factually different from Ex parte French, 547 So.2d 547 (Ala. 1989)."
Boswell, 558 So.2d at 919-20. After examining the record, our Supreme Court concluded that the record was adequate within the meaning of § 12-12-72, Ala. Code 1975.
In Ex parte Burnsed, 844 So.2d 526 (Ala. 2001), the defendant, who was charged with a misdemeanor offense of driving under the influence, was convicted *807 in municipal court and sought to appeal directly to this Court. This Court dismissed the appeal, finding the record inadequate on the basis that the transcript was prepared by a court reporter hired by the defendant and not appointed by the trial court and, therefore, was not an official record. Burnsed, 844 So.2d at 527. On appeal, the Alabama Supreme Court addressed whether a transcript of municipal-court proceedings recorded by a court reporter hired by the defendant constituted an adequate record for purposes of an appeal under Rule 30.2(1), Ala. R. Crim. P., and recognized:
"Section 12-17-1 et seq., including in particular § 12-17-270 (which authorizes the appointment by the court of an official court reporter) apply in circuit court and district court only. Those Code sections do not apply to municipal courts. Unlike circuit courts and district courts, municipal courts are not courts of record. Ex parte Town of Gulf Shores, 412 So.2d 1259 (Ala. Crim. App. 1982). While a defendant who demands a court reporter is entitled to one in the circuit court or the district court, § 12-17-270, Marquis v. State, 439 So.2d 197 (Ala. Crim. App. 1983), and Ex parte White, 403 So.2d 292 (Ala. 1981), no rule or statutory law requires a municipal court to appoint an official court reporter upon a defendant's request. See, e.g., Parker v. City of Tuscaloosa, 698 So.2d 1171 (Ala. Crim. App. 1997)."
Burnsed, 844 So.2d at 528 (emphasis in original).
It is undisputed that the Beardens were tried in the district court and that they hired a private court reporter to record the proceedings in the district court. Unlike the case in Boswell, however, there is no evidence in the record indicating that the State shared in the costs of hiring the court reporter with the Beardens. Furthermore, the lack of an objection on the part of the State to the hiring of the private court reporter and the lack of an objection by the State regarding the accuracy of the record has no effect in light of the fact that the court reporter was hired solely by the Beardens. Further, the Beardens' reliance on Burnsed is unavailing, given that the Beardens were tried and convicted in the district court and not in the municipal court as was the defendant in Burnsed. As the Supreme Court noted in Burnsed, district courts are courts of record and, as such, are authorized to appoint a court reporter. The record does not indicate that the Beardens demanded that the district court provide a court reporter or a reporter's transcript. Further, there is no indication that the court reporter who transcribed the trial in this case was duly appointed by the district court as an official court reporter or was administered an oath. See French, supra. Although French was a civil case involving the admissibility of an unofficial transcript at a subsequent trial, the concerns regarding the accuracy and impartiality of the reporting in a transcript that were expressed by the Supreme Court in French also exist in the context of criminal cases. Indeed, given that in a criminal case the defendant could face the loss of his liberty through incarceration, any concerns regarding the accuracy and impartiality of the reporting in a transcript are even more compelling.
In this case, the record contains a transcript prepared by a private court reporter hired by the Beardens to transcribe proceedings in the district court. There is no indication in the record that the court reporter was administered an oath or was otherwise authorized to transcribe the proceedings in the district court. Although the main opinion points to instances suggesting that the court reporter was the official court reporter authorized by the district court, statements such as "we're *808 on the record" and interruptions by the court reporter during trial do not, in and of themselves, obviate the need to have some indication on the record that the court reporter was formerly appointed or was administered an oath. Furthermore, nothing in the record indicates that the court reporter was anything more than a private court reporter hired by the Beardens, and, thus, there was no basis for the State to object at that time. Certainly, the better practice would have been for the district court, out of an abundance of caution, to have administered an oath to the court reporter. Therefore, given the particular facts and circumstances of this case, I do not believe that the transcript in this case was an official record and, therefore, I believe that it was not an "adequate record" for appeal under Rule 30.2(1). Because the Beardens failed to meet the requirements of Rule 30.2, jurisdiction lies with the circuit court and not with this Court. Accordingly, this appeal is not properly before this Court, and it is due to be dismissed. See Smith v. State, 869 So.2d 1189 (Ala. Crim. App. 2003) ; Scrushy v. State, 834 So.2d 149 (Ala. Crim. App. 2002) ; Hill v. State, 710 So.2d 519 (Ala. Crim. App. 1997).
Welch, J., concurs.

The Beardens appealed directly to this Court pursuant to Rule 30.2(1), Ala. R. Crim. P.

We also note that the Beardens did not file their motion to dismiss the complaints until approximately four hours before trial began. (C. 62.) At no point during the interval between their arrests and trial did the Beardens file any motions alleging a defect in the complaints.

Rule 30.2(2), Ala. R. Crim. P., provides for a direct appeal to this court if "the parties stipulate that only questions of law are involved and the district court or the municipal court certifies the question." In their reply brief, the Beardens concede that Rule 30.2(2) does not apply to their case.

The Beardens expressly waived their right to a jury trial, see (C. 28, 68), and the State is not entitled to a jury trial on a misdemeanor offense. See Ex parte Boswell, 558 So.2d 918, 921 (Ala. 1990).